## Case No. 7,536.

The JOSEPH E. COFFEE.

[Olc. 401.] [1]

District Court, S. D. New York. Oct., 1846.

[1] [Reported by Edward R. Olcott, Esq.]

G. A. Schufeldt, for libellant.
C. Van Santvord, for claimant.

BETTS, District Judge. In so far as Terry took part in ordering or procuring the work and materials for which the action is brought, he did not act in his own right as contractor and builder of the boat, but as agent of the owner expressly directed to obtain them of the libellant. Terry's testimony, moreover, clearly proves that the owner did not expect the charge for that service was to be made by the libellant on his, Terry's, account, as both he and the claimant well knew Terry's contract had already been fully satisfied and paid. The demand exceeding fifty dollars, this case, prima facie, falls within the statute of the state giving a lien for work and materials upon the vessels to which they are applied. 2 Rev. St. 405, § 1. Section 2 of the statute declares, that "in all cases such lien shall cease immediately after the vessel shall have left the state." This provision plainly imports that the departure from the state is to be made in the usual course of business, and cannot apply to vessels surreptitiously taken away. Nor can the fact be of any avail when the vessel has been clandestinely run out of the state to defeat the lien.

The creditor who permits a vessel, subject to his debt, to leave the state in the regular course of her employ, or in such manner as to import that he has notice of her intended departure, would properly be presumed to have waived his lien. The law gives him the privilege so long only as the vessel continues within the state. This condition is vital to his right. Still it is an inherent quality of every condition dependent upon the volition and action of a party, that he shall not be prevented performing it by one to whose benefit the non-performance is to enure. Williams v. U. S., 2 Pet. [27 U. S.] 102; U. S. v. Arredondo, 6 Pet. [31 U. S.] 746; Whitney v. Spencer, 4 Cow. 41. Any act of the owner of the steamer, with design to cut off or evade the lien, such as a removal of the vessel from the state in a manner rendering it impossible for the lien creditor to pursue his remedy against her, within the terms of the statute, or any fraudulent concealment or deceit hindering it, would interpose no bar to his right. Here the steamboat was run from this port across the state line on Sunday, a dies non juridicus, when no process could be issued against her, or be served if already taken out; and scarcely more than touching the Jersey shore on the opposite side of the river, her course was reversed, and she returned directly to this port again. If taking the vessel out of the port into another state was done with no purpose to withdraw her from the libellant's lien, but with intent to try her machinery or find a more commodious place to finish her, or on a pleasure excursion, in neither case would the rights of the libellant be prejudiced (Hancox v. Dunning, 6 Hill, 494), especially as it does not appear the libellant had then completed his work or contract, and was in a condition to enforce his lien. A part of his job, that of fitting on the steering gear, seems to have been completed on Saturday, but he continued his labors upon her the Monday and Tuesday following; on which day, being the 22d of July, he made up and presented his bill, certified by Terry to be correct, to the owner, who received it without objection, the

boat then lying in this port. The account not being satisfied, this libel was filed, and the boat was arrested the 31st July, before she sailed from here on her regular employment.

It is contended by the claimant that the lien does not attach to ferry boats, and this vessel being used as a ferry boat is exempt from it. The cases, 5 Wend. 564, 17 Johns. 54, are relied upon to support this position. The case in Wendell has no analogy to the point now raised; the vessel there attached was a small, open, undecked boat, probably a row-boat. The decision in 17 Johnson was in relation to horse ferry boats, used on the ferry between New-York and Hoboken, and the court held that ferry boats used between New-York and Hoboken were not the description of vessels contemplated in the act of February 28, 1817. That the act embraced only vessels navigating the ocean, or at most those sailing coastwise from port to port. The doctrine declared in that decision is essentially qualified if not wholly discarded in subsequent cases (Walker v. Blackwell, 1 Wend. 557; Farmers' Delight v. Lawrence, 5 Wend. 564), which consider all vessels, not being row-boats, scows, or like small craft, included within the statute. The first legislation of the state, giving a lien to material men, was in relation to foreign vessels only. The act of February 28, 1817, extended the lien to domestic vessels, but the supreme court, in 17 Johns. 54, were disposed to consider the provisions of the amendatory law as applicable only to vessels of like class with those coming under the original act. They gave emphasis to particular terms and phrases employed in the act of 1817, as limiting its operation to ships and vessels employed in navigation, if not upon the high seas, at least as coasters.

The Revised Statutes do not appear to indicate an intention to discriminate in respect to the dimensions or employment of the vessels which shall be subject to a lien. The provision is most ample in its terms. Section 1 enacts, that "whenever a debt, amounting to fifty dollars or upwards, shall be contracted by the master, owner, agent or consignee of any ship or vessel, within this state," &c.—language applying in all its terms equally to home vessels and small craft, as those of the largest dimensions and owned abroad. The reason inducing these provisions would seemingly no less affect the one class than the other. The smallness of the debt which shall carry with it the privilege, and the notorious fact that mechanics are most usually engaged in furnishing repairs and supplies to home vessels of small value are evidences that the aim of the legislature was to protect the humble description of claims with no less care than those of greatest magnitude. Nor is it easy to perceive how the occupation of the vessel as a ferry boat can vary the application of the law. Steam vessels so employed are of great cost, and not uncom-

monly of a size sufficient for any other service. Such is the case with numbers constantly employed in this harbor, and on other waters of this state to serve ferries. The boat now arrested is constructed in build and size like ordinary passenger or freight steamboats, and it would be an extraordinary anomaly to hold she is subject to the lien if engaged as a freighter on the river, but must be discharged from it when placed on a ferry. Her cost, too, was probably four times that of a sloop of her tonnage. The decision in Hancox v. Dunning, 6 Hill, 494, brings such sloops within the lien act, and, upon parity of reason and necessity, this steam vessel should be included also within its operation. The decree will be in favor of the libellant for $123, with interest from July 31st, 1846, and costs.